FRANÇOIS *v.* JACINTO LOBRANO.

Though partial payments have been made to the master by a slave, for the purpose of purchasing his freedom, the latter remains the property of the master, who will continue to be entitled to all his services; and a purchaser, to whom he is after-wards sold, subject to the condition of being emancipated on his paying the sup-posed balance of his value, will be entitled to all his services until such balance is paid. *Per Curiam:* A slave cannot become partially free; nor can he, until le-gally and absolutely emancipated, own any property, without the consent of his master.

APPEAL from the District Court of the First District, *Buchan-an,* J.

*David,* for the appellant.

*Latour,* for the defendant.

*Castera* and *Marsoudet,* for the warrantors.

MORPHY, J. The petitioner, formerly a slave of Louis Pilié, was sold by his master to Joseph Sauvinet, on the 23d of July,

1835, for the sum of $300, and on the express condition that as soon as he should have reimbursed to the purchaser the said sum of $300, he should be entitled to his freedom, the formalities prescribed by law to be fulfilled at his (the petitioner's) expense. On the 25th of January, 1839, Sauvinet sold the petitioner to Joseph Saliba, for the same price, and on the same condition; and, on the 11th of October, 1838, Saliba sold him to the present defendant, for the same price and on the same condition. The petitioner sues his present master for his freedom, and for damages, alleging that, previous to July, 1835, he had paid Louis Pelié $500, on account of his freedom, and that he has long since paid to his subsequent masters more than the $300 he was bound to reimburse to them; that, notwithstanding such payment, the defendant unjustly detains him as a slave, and has put him in the chain gang of the city. The defendant admitted that he had bought the slave François on the condition set forth in his petition, but averred that, far from said slave having reimbursed the $300 he gave for him, he had not even paid his monthly wages; that he has been often deprived of the services of François, by his running away during several weeks; that, on account of this bad habit of running away, coupled with the still worse habit of drinking spirituous liquors, he has been obliged to lodge said slave in jail, as the only means of correcting his bad habits and securing his person; that even had he really paid the $300 mentioned in the sale, he could not be emancipated under the laws of the State, by reason of his bad character and habits, &c. The previous vendors, having been called in warranty, answered to the same effect; whereupon, after hearing the parties and the evidence adduced, the judge below rendered a judgment in favor of the defendant. The plaintiff appealed.

So far from showing that the plaintiff complied with the condition under which he was to be emancipated, to wit, the payment of the sum of $300, the evidence does not even clearly prove that he regularly paid the monthly wages, or rendered the services his successive masters had a right to expect of him as their slave, nor does it establish for him a good character. Undaunted by the barrenness of the record, or the unfavorable evi-

François v. Lobrano.

dence spread-upon it, the appellant's counsel has made an effort in favor of his client, which shows his zeal and the resources of his imagination. His whole argument, and a very long one it is, rests upon a conceit, which has, at least, the merit of novelty. The idea is, that prior to July, 1835, his client was worth $800; that from the moment he paid $500 to L. Pilié, he became, *eo instanti*, a co-proprietor of himself with his master, for five-eighths of his value; that the partnership thus formed continued between him and his subsequent owners, to whom Pilié could transfer only his interest in the subject matter of the partnership, to wit, three-eighths of his value; that, therefore, he owed to his successive masters or co-proprietors, only three-eighths of his labor or wages, and was himself entitled to the other five-eighths. By means of this division or partition of the wages, the counsel has attempted to show that his client has more than complied with the condition under which he was to obtain his freedom. To this reasoning, or the conclusion it leads to, we cannot assent. A slave cannot become partially free, nor can he, until legally and absolutely emancipated, own any property, without the consent of his master. Notwithstanding the partial payment he had made with a view to purchase his freedom, François, to all intents and purposes, continued to be the slave of Pilié, who was entitled to all his services as such. When he became dissatisfied with him, and sold him on account of his bad conduct, he did for him all he was bound to, by securing to him the means of becoming free on paying to the purchaser $300, the supposed balance of his value. Until this amount is paid, he must remain the absolute slave of the defendant.

*Judgment affirmed.*